[Civ. No. 15356. Third Dist. Oct. 26, 1976.]

STATE FARM FIRE AND CASUALTY COMPANY,
Plaintiff and Respondent, v.
FRANK THOMAS CAMARA et al., Defendants and Respondents;
CHERYL DeBOER, Defendant and Appellant.

**COUNSEL**

Rushing & Clark, Rushing, Clark & Lejions, Ernest Rushing and Albert G. Clark, Jr., for Defendant and Appellant.

Robert A. Seligson for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

## OPINION

**PARAS, J.**—Plaintiff, injured in an automobile accident, seeks to obtain coverage under the general liability coverage provisions of the defendant-driver's "homeowner's" insurance policy. The injured party, Cheryl DeBoer (herein referred to as "plaintiff," although she is a defendant in this action for declaratory relief filed by the insurer, State Farm Fire & Casualty Company), appeals from a judgment declaring that the policy did not afford coverage for the accident. We affirm.

Plaintiff was injured while a passenger in a 1970 Volkswagen Dune Buggy, California license No. 672 BCB, operated by her brother-in-law, Frank Camara, during a deer hunting trip. She filed suit against Camara, alleging that he drove off a fire protection road "upon a very steep hillside at a point which was used to skid logs down hill," and a "collision" ensued, proximately causing her injuries. In the third cause of action, admittedly in an effort to obtain coverage on Camara's homeowner's policy, she alleged that Camara so negligently "designed, constructed and assembled the vehicle as to proximately cause the vehicle to overturn." No evidence was presented at the trial, the parties having agreed that the issue is whether this allegation designates a risk covered by the State Farm homeowner's policy.[1]

I

In dealing with a comprehensive general liability policy containing an automobile exclusion, the Supreme Court held in *Pacific Employers Ins. Co.* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 318 [54 Cal.Rptr. 385, 419 P.2d 641], that a purported limitation of coverage to automobile operation on the premises and the "ways immediately adjoining," was so vague that it created no limitation at all. The policy was therefore in effect deemed an automobile liability policy, and the provisions of Vehicle Code section 16451, requiring that coverage extend throughout the continental limits of the United States, were read into it. As stated in a leading practice manual: "In essence the court turned every homeowner's and comprehensive liability policy into an automobile liability policy that would incorporate provisions of Veh C §16451, under the doctrine of *Wildman* v. *Government Employees' Ins. Co.* (1957) 48

---

[1]Camara's automobile insurance liability limit was $100,000, the full amount of which was paid to plaintiff in settlement. Plaintiff claims damages greater than this, resulting in this attempt to obtain the additional $50,000 of the homeowner's policy coverage.

C2d 31, 307 P2d 359." (Melnick, Cal. Automobile Insurance Law Guide (Cont. Ed. Bar 1973) § 6.7, p. 84.)

The Legislature responded by adding Insurance Code section 11580.1, subdivision (g) (now § 11580.1, subd. (e)), which declares that homeowner's policies are not to be considered automobile liability policies.

When the issue was next raised, in the companion cases of *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192 [84 Cal.Rptr. 705, 465 P.2d 841], and *Huggins* v. *Yoshiwara* (1970) 2 Cal.3d 200 [84 Cal.Rptr. 709, 465 P.2d 845], the Supreme Court overruled the *Pacific Employers* case "[t]o the extent that it is inconsistent herewith" (2 Cal.3d at p. 199), but not on the basis of Insurance Code section 11580.1, subdivision (g). It based its holding upon the doctrine expressed in *Atlantic Nat. Ins. Co.* v. *Armstrong* (1966) 65 Cal.2d 100, 112 [52 Cal.Rptr. 569, 416 P.2d 801] (also in *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269-270, fn. 5 [54 Cal.Rptr. 104, 419 P.2d 168] and accompanying text) that in determining whether the policy in question is an automobile liability policy subject to the *Wildman* doctrine the court must take cognizance of "the intent and reasonable expectations of the parties in entering into the agreement." In both *Herzog* and *Yoshiwara* the court held that neither the intent of the parties nor their reasonable expectations contemplated that the personal liability provisions of a homeowner's policy should provide coverage for automobile accidents occurring away from the immediate vicinity of the insured's premises. The accident in *Herzog* occurred several miles from the premises. In *Yoshiwara,* the insured premises were in Los Angeles and the accident occurred in Oxnard. Contrary to *Pacific Employers,* the court stated, "While we agree that the phrase 'ways immediately adjoining' is somewhat imprecise, we do not believe that it is so ambiguous as to defy reasonable construction in the context of a particular case." (2 Cal.3d at p. 198.) Thus the issue involved in the *Pacific Employers* case was finally settled. (See also *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 516-517 [88 Cal.Rptr. 246].)

Three years later, in *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123], the Supreme Court was confronted with a related, but actually different question. The plaintiff was accidentally shot by the defendant while riding in the latter's automobile. Defendant had filed the trigger mechanism of his .357

Magnum pistol to give it "hair trigger action." While defendant was shooting at jackrabbits out the window of the moving vehicle, the vehicle hit a bump and the gun accidentally discharged, injuring plaintiff. Plaintiff sought coverage under both defendant's automobile insurance policy and his homeowner's policy. The insurer conceded the obvious, that if the gun had accidentally fired while the insured was walking down the street or running through the woods, any resultant damage would be covered by the homeowner's policy; but it contended that coverage could not apply to damages sustained while riding in an automobile because the policy excluded injuries, "arising out of the . . . use . . . of a motor vehicle." The Supreme Court ruled that the injury was *jointly* caused by negligent driving (an excluded risk) and negligent filing of the trigger mechanism (an included risk); since therefore the liability of the insured arose in part from negligent conduct unrelated to the automobile (the filing of the trigger mechanism) and existed independently of the automobile's use, the homeowner's policy provided coverage.

■ When we consider *Herzog* and *Partridge* together, it becomes apparent that where coverage of a risk is reasonably contemplated by the parties and such risk is independent of the "ownership, maintenance, operation, use, loading or unloading" of a vehicle, the risk will be covered under a homeowner's policy even if the injury also arises out of the ownership, maintenance, etc. of the vehicle.

Two later cases have considered *Partridge*. The first was *United Services Automobile Assn.* v. *United States Fire Ins. Co.* (1973) 36 Cal.App.3d 765 [111 Cal.Rptr. 595], in which the named insured's son was attempting to start a friend's car at the friend's house, and was pouring gasoline into the carburetor. The carburetor backfired, igniting the gasoline. The son wildly threw the burning can, which injured his friend. The Court of Appeal held that the injuries arose out of the "use" of a nonowned automobile, and hence were covered under the insured's automobile policy. (36 Cal.App.3d at p. 771.) It also held that since the accident occurred an appreciable distance away from the insured's premises, no coverage was provided by a separate homeowner's policy which also insured the son. In this latter holding the court admittedly was governed by the *Herzog* principle and did not concern itself with homeowner's policy coverage for a nonautomobile-related activity which concurs with an automobile-related activity to cause injury. (36 Cal.App.3d at p. 773.) The second was *Glens Falls Ins. Co.* v. *Rich* (1975) 49 Cal.App.3d 390 [122 Cal.Rptr. 696], which, like *Partridge,* involved

the accidental discharge of a gun on a hunting trip. Defendant stopped his vehicle on a logging road to shoot a squirrel, and reached under the seat for his shotgun as he opened the car door. The shotgun discharged, injuring his passenger. The court held as follows: "The rationale of *Partridge* is applicable to the instant case. The undisputed facts establish that DuBay placed a loaded gun under the front seat of his vehicle and that the gun fired when he reached for the gun. Such an act, if found to be negligent and a proximate cause of Rich's injury, would make DuBay liable to Rich for his injuries. Accordingly, DuBay's homeowner's policy would provide coverage for Rich's claim. The trial court's determination that there was a causal connection between DuBay's use of the vehicle does not affect the coverage under the homeowner's policy. We perceive that under the holding of *Partridge* Rich may recover if the accident arose from a cause not involving the use of the vehicle or from a cause concurrent with any cause arising from the use of the vehicle." (49 Cal.App.3d at pp. 394-395.)

## II

We now advert to the instant case. Coverage E of defendant's homeowner's policy, entitled "Personal Liability," states that coverage is provided for damages "caused by an occurrence." "Occurrence" is broadly defined as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." However, the policy contains an exclusion which states that coverage does not apply: "(a) [t]o bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of: . . . (2) [a]ny motor vehicle owned or operated by, or rented, or loaned to any insured; . . ."[2] Unlike the policies in the *Pacific Employers, Herzog, Yoshiwara,* etc. cases, this exclusion is not limited to motor vehicles *away* from the insured's premises; it applies to all registered motor vehicles without geographical limitation.

Thus we come to the crucial question. When Camara started with a 1970 Volkswagen and "designed, constructed and assembled" it into a dune buggy, (which activity caused or contributed as a cause to the injury), did such activity arise out of the "ownership, maintenance, operation, use, loading or unloading" of the vehicle? If so, whether engaged in on or away from the insured's premises, such activity is excluded. It is undisputed that the vehicle was at all times owned by

---

[2]There is a minor limitation to this exclusion, but it is inapplicable here.

Camara; hence the work of design, construction and assembly necessarily arose out of its "ownership." Most certainly such work arose out of the vehicle's "use." "The term is not confined to motion on the highway, but extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured." (*Pacific Indem. Co. v. Truck Ins. Exch.* (1969) 270 Cal.App.2d 700, 703 [74 Cal.Rptr. 793]; see also *Travelers Ins. Co. v. Northwestern Mut. Ins. Co.* (1972) 27 Cal.App.3d 959, 962-966 [104 Cal.Rptr. 283]; and *United Services etc., supra,* 36 Cal.App.3d at pp. 769-771, and authorities there cited.) Since the question is therefore answered in the affirmative, there is no coverage.[3]

### III

Even if we conceived of the work on the dune buggy as not involving its ownership, maintenance, etc., the result would not be different. Two distinct activities must be considered: first, that which is asserted to be the negligent cause of the injury (construction and assembly of the dune buggy), and second, that which more directly brought the injury about (the accident on the steep hillside). Both such activities are included within the meaning of the exclusionary phrase "bodily injury . . . *arising out of* the ownership, maintenance, operation, use, loading or unloading of . . . any motor vehicle," (italics added); if *either* arose out of the ownership, etc. of the vehicle, coverage for the injury is excluded. We have thus far considered the first; now we turn to the second.

In contrast to *Partridge, United States,* and *Glens Falls,* the injury in the instant case did not involve an instrumentality other than and separate from the vehicle itself. Under the undisputed facts, the accident would not have happened *but for* the defendant's design and construction of the dune buggy. But it does not follow that the accident did not *arise out of the operation or use of* a motor vehicle. The facts show the contrary. As *Partridge* held, the nonvehicle-related cause must be independent of the vehicle-related cause in order for the liability to be

---

[3]We are not unmindful of the rule of construction that uncertainties in policy language are construed in favor of imposing liability on the insurer. (*Pacific Indem. Co. v. Truck Ins. Exch.* (1969) 270 Cal.App.2d 700, 703 [74 Cal.Rptr. 793].) But the activity of reconstruction of a vehicle so as to convert it into a dune buggy is so clearly a use thereof by its owner under the cited authorities as to admit of no other conclusion.

covered by the homeowner's policy.[4] Although the operation or use of the dune buggy was not the sole cause of the accident, any contributing *design* cause was dependent upon such operation or use, such that any liability for negligent design necessarily arose out of the operation or use of the motor vehicle.

In other words, the *only* way in which plaintiff could have been exposed to the claimed design risk was through the operation or use of the motor vehicle. Under such circumstances defendant's asserted liability could not but arise out of the ownership, maintenance, operation or use of the vehicle; it was therefore excluded. This result ineluctably accords with the reasonable expectations of Camara. As a reasonable person who purchased both the automobile policy and the homeowner's policy, he could not expect the homeowner's policy to indemnify him against a claim arising out of such facts. (Cf. *Herzog* v. *National American Ins. Co., supra,* 2 Cal.3d at p. 197.)

### IV

Our decision appears to be at odds with the very recent case of *Gonzales* v. *St. Paul Mercury Ins. Co.* (1976) 60 Cal.App.3d 675 [131 Cal.Rptr. 626], in which it was held that a homeowner's policy covers the insured on a claim against him arising from his own negligent repair of the brakes on his vehicle.

We can only observe that the *St. Paul Mercury* court has fallen into the same error as the *Pacific Employers* court. A hundred similar cases can be conceived. Today the defendant-owner negligently repairs the brakes; tomorrow he carelessly leaves worn tires on the vehicle (which later result in a blowout), or he fails to apply the hand brake when parked on a hill (as a result of which it rolls uncontrolled down the hill), or he negligently fails to replace worn out spark plugs (as a result of which the vehicle stalls at a railroad crossing). Injury from any such acts unquestionably arises out of the ownership, maintenance, operation, use, etc. of the vehicle, yet under the *St. Paul Mercury* holding it is still covered when the homeowner's policy clearly says it is not. The *St. Paul*

---

[4]The specific pertinent words of *Partridge* are: ". . . although the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries. . . . inasmuch as the liability of the insured arises from his non-auto-related conduct, *and exists independently of any 'use' of his car,* we believe the homeowner's policy covers that liability." (Italics added.) (10 Cal.3d at p. 103.)

*Mercury* court has in effect rendered the exclusion nugatory and converted every homeowner's liability policy into an automobile liability policy, *a la Pacific Employers.* And this in the face of the Supreme Court's very clear pronouncement in *Partridge* that for the homeowner's policy to cover the loss, the liability must arise from non-vehicular conduct and must exist independently of use or ownership of a vehicle.

The judgment is affirmed.

Puglia, P. J., and Friedman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 22, 1976.