[Civ. No. 54433. Second Dist., Div. Two. July 20, 1979.]

NATIONAL INDEMNITY COMPANY, Plaintiff and Appellant, v. FARMERS HOME MUTUAL INSURANCE COMPANY, Defendant and Appellant.

**COUNSEL**

Ives, Kirwan & Dibble, John Brevidoro, Peter M. Fonda and Melvin F. Seifert for Plaintiff and Appellant.

Dunne, Shallcross & Kane and Russell E. Shallcross for Defendant and Appellant.

## OPINION

**COMPTON, J.**—In this action for declaratory relief between two insurance carriers the question is whether one or both of two insurance policies, i.e., a homeowner's policy with personal liability coverage and an automobile insurance policy cover a particular injury.

The trial court held that both carriers should share the coverage and duty to defend. Both have appealed, each contending that the other should bear the entire obligation.

The trial court's findings of fact, with the exception of two which we will discuss *infra,* are simply a restatement of the stipulated facts upon which the case was tried. We set them out here:

"1. On May 4, 1974, National issued its policy bearing policy No. PAC 50-15-32 to Iluminado G. Quibael. Said policy afforded liability coverage to Quibael relating to, amongst other things, a 1972 Toyota Carina.

"2. On December 3, 1974, Farmers issued its policy bearing policy No. 4-286918 in favor of Iluminado and Lucia A. Quibael, husband and wife, providing liability insurance coverage through said homeowners insurance policy.

"3. On February 6, 1975, Lucia Quibael was using the aforedescribed two-door Toyota Carina. Her daughter, Iriss, approximately twelve years old at the time, was a passenger in the right front seat of said vehicle. Conrad Cortes, a nephew, between the age of five and six, was a passenger in the rear seat of the vehicle.

"4. On February 6, 1975, Lucia was caring for Conrad Cortes, her nephew, on a non-compensatory basis.

"5. On February 6, 1975, Lucia and Iriss drove Conrad Cortes from the Quibael residence to the Cortes residence located at 1176 North Kenmore Avenue, Los Angeles, California.

"6. At about 4 p.m. on February 6, 1975, Lucia arrived at the Cortes residence and parked her Toyota on the west side of Kenmore Avenue, in a southbound direction, across the street from the Cortes residence. Lucia Quibael stopped the vehicle, turned off the ignition and prepared to exit

the vehicle from the driver's side. Her daughter, Iriss, thereupon opened the passenger side door, the side to the curb, in order to exit from the vehicle. Without the knowledge of either Lucia Quibael or Iriss Quibael, Conrad Cortes, the minor, exited from the vehicle on the passenger's side, the side closest to the curb and proceeded to walk, or run, in front of the Quibael vehicle into the street, apparently going home. When he was approximately one-half way across the street, and while both Lucia and Iriss were still in the Toyota, an accident occurred wherein Conrad was struck by another southbound vehicle operated by one Mario Gomez Giron.

"7. On February 5, 1976, Conrad Cortes, by and through his guardian ad litem, Jacobo Cortes, brought an action in the superior court bearing case No. C-150401 naming as defendants, Iluminado G. Quibael, Lucia A. Quibael, Mario Giron, Does 1 through 10, inclusive.

"8. Both the National and Farmers policy were in effect and afforded coverage to their respective insureds on February 5, 1976.

"9. The National policy provides a liability coverage on behalf of the Quibaels for all sums which the Quibaels shall become legally obligated to pay as damages because of bodily injury, sickness or disease sustained by any person caused by accident and arising out of the ownership, maintenance or use of the Toyota Carina vehicle.

"10. The Farmers policy provides for general liability coverage in favor of the Quibaels relating to bodily injury or property damage arising out of activities which are ordinarily incident to a nonbusiness pursuit."

The two remaining findings which are critical to the resolution of this dispute are as follows:

"11. Insofar as Farmers policy is concerned, the acts of Lucia A. Quibael in the supervision of Conrad A. Cortes was incidental to a nonbusiness pursuit, to wit, babysitting.

"12. Insofar as the National policy is concerned, the injuries and damages suffered by Conrad Cortes arose out of the use of the vehicle as Conrad Cortes had not yet completed alighting from the vehicle at the time that he was struck by the vehicle operated by Mario Gomez Giron."

Not mentioned in the findings is the fact that the Farmers Policy specifically excludes from coverage ". . . bodily injury . . . arising out of the ownership, maintenance, operation, use, loading or unloading of any motor vehicle owned or operated by . . . the insured. . . ."

We are not here dealing with the question of primary and excess coverage for an injury within the ambit of the two policies. Rather, the issue is whether, under the facts, the automobile policy provides coverage and if so, whether the exclusion in Farmers' policy is effective.

■ Here the trial court found that the injury arose out of the "use" of the vehicle. Essentially National argues that the evidence does not support that finding and that in reality the insured automobile had nothing to do with the injury.

An automobile can be in "use" even though at rest. (*United Services Automobile Assn.* v. *United States Fire Ins. Co.,* 36 Cal.App.3d 765 [111 Cal.Rptr. 595].) Further, National's policy specifically provides that "use" of an automobile includes loading and unloading. Case law is to the same effect. (*Argonaut Ins. Co.* v. *Transport Indem. Co.,* 6 Cal.3d 496 [99 Cal.Rptr. 617, 492 P.2d 673]; also see Black's Law Dict. (4th ed.) unloading.)

The presence of small children in an automobile imposes a particular duty of care and alertness upon the driver in selecting the place for and supervising the manner of discharging the children from the vehicle. The conduct of an ambulatory child of tender years is often impulsive and unpredictable. (*Hilyar* v. *Union Ice Co.,* 45 Cal.2d 30 [286 P.2d 21].) The process of unloading a child from a motor vehicle does not end the moment that the child's feet touch the ground or when his or her body is entirely outside the vehicle.

The case of *State Farm Mut. Auto. Ins. Co.* v. *Partridge,* 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123], is the primary authority on which National relies for establishing that the Farmers' policy provides coverage. Unfortunately for National that case also points forcefully toward coverage by National's automobile policy. At least nothing in the *State Farm* case provides any basis for exonerating the automobile insurance carrier on the present facts.

In that case the insured was hunting rabbits from his moving vehicle while driving and holding a gun. He hit a bump causing the gun to discharge and wound his passenger. The gun had been modified by the insured prior to the accident so that it had a "hairtrigger" action.

The Supreme Court assumed, without serious discussion, that the accident arose out of the "use" of a motor vehicle even though the direct offending instrumentality was the gun and but for presence of the gun there probably would have been no injury.

The trial court's finding here that the injury arose out of the "use" of the automobile is well supported by the facts and the law and its propriety does not appear to us to be reasonably debatable.

The finding that the insured was guilty of an independent act of negligence which escaped the effect of the exclusion in the Farmers' policy is another matter however.

As stated in *Los Angeles Ins. Co.* v. *Fireman's Ins. Co.,* 30 Cal.App.3d 669 [106 Cal.Rptr. 540]: " 'The reasonable expectations of the insurer in a homeowner's policy—as additionally manifested in the type of information sought upon application for such a policy and the relatively small premiums charged—clearly do not contemplate coverage for automobile-related accidents which occur beyond this limited area. Nor do the reasonable expectations of the insured contemplate that his homeowner's policy will provide such extended automobile coverage; . . .' "

On the other hand the major thrust of *State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, was the holding that the independent nonvehicular conduct of modifying the trigger mechanism of the gun invoked the personal liability coverage of the homeowner's policy as well as the coverage of the automobile policy, notwithstanding an exclusion in the homeowner's policy for vehicle-related injuries.

*Gonzalez* v. *St. Paul Mercury Ins. Co.,* 60 Cal.App.3d 675 [131 Cal.Rptr. 626], another case relied on by National, involved an insured who negligently repaired the brakes of his car in his own garage and later was involved in an accident with the vehicle. The cause of the accident was the faulty brakes.

The insured had a "homeowner's" policy containing personal liability coverage but with an exclusion for liability arising out of ownership, maintenance or use of an automobile "while away from the premises."

Division One of this court found coverage by the homeowner's policy for the negligent act of repairing the brakes. The court, however, placed considerable emphasis on the fact that the repair *was done on the insured's premises.*

Neither the *Partridge* nor *Gonzalez* cases are of any solace to National. Both of those cases involved affirmative independent conduct in negligently modifying the offending instrumentality. Additionally *Gonzalez* involved wording in the exclusion of the homeowner's policy which is not present here, and *Partridge* involved independent *nonvehicular conduct.*

More germane to the present case is the holding of *State Farm Fire & Cas. Co.* v. *Camara,* 63 Cal.App.3d 48 [133 Cal.Rptr. 600]. There the insured modified a Volkswagon and converted it to a "dune buggy." A passenger injured in an accident, which occurred while the insured was driving the dune buggy, brought an action against the latter on the theory of negligent design and construction. The Court of Appeal for the Third District, in a particularly well-reasoned opinion by Justice Paras, concurred in by Presiding Justice Puglia and Associate Justice Friedman, found that the vehicular exclusion in the homeowner's personal liability policy applied.

The court in *Camara* criticized and disagreed with the *Gonzalez* decision and held specifically that the vehicular exclusion must be given effect unless there is independent nonvehicular conduct. ■ Negligence, to be covered by the homeowner's policy, must exist independently of the ownership, use or maintenance of the vehicle.

In applying the rationale of the *Camara* case to the facts of the case before us we do not create a conflict with *Gonzalez* v. *St. Paul Mercury Ins. Co., supra,* 60 Cal.App.3d 675. That decision, as we have indicated, is readily distinguishable.

Here the act of the insured which gives rise to liability, if such liability is ultimately established, is her negligent failure to supervise and control the child during the unloading of the vehicle at a place well removed

from the insured's premises. That is what the trial court found and that is what the stipulated facts establish.

There is a complete absence of conduct on the part of the insured which is independent of and unrelated to the "use" of the vehicle. The conduct of the insured which contributed to the injury simply cannot be dissociated from the use of the vehicle. Nor did the injury, insofar as the insured is concerned, involve an instrumentality other than the vehicle itself. (See *State Farm Fire & Cas. Co.* v. *Camara, supra,* 63 Cal.App.3d 48, at p. 54.) This being so, the exclusion clause in the Farmers homeowners policy must be given effect.

The judgment is reversed and the matter remanded to the trial court with directions to enter a judgment in favor of Farmers.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied August 9, 1979, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied September 26, 1979.