[Civ. No. 29330. Fourth Dist., Div. Two. Jan. 19, 1983.]

ALLSTATE INSURANCE COMPANY, Plaintiff and Appellant, v.
ROSLIE HELEN JONES et al., Defendants and Respondents;
ROSEBURROUGH TOOL COMPANY, INC., Intervener and Respondent.

**COUNSEL**

Haase & Heinemann and Conrad L. Squires for Plaintiff and Appellant.

Porter, Scott, Weiberg & Delehant and Anthony S. Warburg for Defendants and Respondents.

Cummings, Kemp & Meyers and Thomas B. Cummings for Intervener and Respondent.

OPINION

**MORRIS, P. J.**—In this action for declaratory relief, plaintiff and appellant Allstate Insurance Company (Allstate) asks this court to determine whether the "General Liability" section of a comprehensive policy it issued to Jerry L. Alberts afforded coverage for the accident in question. At trial, both parties stipulated to the essential facts and submitted the policy to the trial court for its decision as to coverage. Allstate contended that the exclusionary clause in the general liability section, which withheld coverage for injuries "arising out of the ownership, maintenance, operation, use, loading or unloading of" any automobile, precluded recovery for the accident in question. Allstate submitted that the "Automobile Liability" section was the only insurance intended to cover this type of accident. Defendants argued that, under the California Supreme Court case of *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123], both the "General Liability" and "Automobile Liability" sections provide coverage for the accident.

The trial court ruled in defendants' favor. Because we believe that the rationale in *Partridge* supports a different result, we reverse.

FACTS

The following facts are not in dispute.

Jerry L. Alberts was doing business as J. L. Alberts Concrete Construction (Alberts). Alberts owned a pickup truck which was equipped with an open-ended, overhead tubular steel rack, used to store and transport steel reinforcing rods (rebar). On July 7, 1977, employees of Roseburrough Tool Company, Inc. (Roseburrough) placed upon Alberts' truck, 20 pieces of 20-foot long, one-half inch rebar. After July 7, but prior to the time of the accident, the "rebar was loaded, secured, fastened, supervised, and inspected as well as placed, maintained and stored upon the overhead tubular steel rack" by Alberts. Sometime before July 15, 1977, six pieces of rebar were removed from the truck.

On July 15, 1977, John Anthony De Los Reyes was permissively driving Alberts' truck when he collided with a Volkswagen convertible operated by decedent Robert H. Jones. His wife, Rosalie Helen Jones, was a passenger. As a result of the impact of the two vehicles and the improper storage of the load, the fourteen remaining pieces of rebar were ejected from the storage rack on the pickup truck. The rebar traveled across the left rear of the Volkswagen towards its front and struck Mr. Jones in the rear of his skull. Mr. Jones remained comatose in critical condition for approximately five months. He died in early January 1978 without ever regaining consciousness.

Alberts was covered by two separate insuring agreements issued by Allstate under a single policy. The "Automobile Liability Agreement" provided coverage with limits of $100,000 for each person injured and $300,000 per occurrence. The comprehensive "General Liability Agreement" provided coverage with limits of $300,000 per occurrence.

The findings of the trial court were based upon the joint set of stipulated facts[1] submitted by the parties. The stipulation specifically included an agreement by Allstate that its insured was negligent with respect to the management, maintenance, driving, operating and entrustment of the pickup truck and independently negligent with respect to the inspection, supervision, loading, securing and fastening of the rebar which was stored upon the rack on the pickup truck. Furthermore, the parties specifically stipulated that each of the independent negligent acts of the Allstate insured was a proximate cause of Mr. Jones' death.

With reference to the "General Comprehensive Liability" portion of the policy, the trial court thus found that "[t]he negligent conduct of Alberts with respect to the rebar is a concurrent proximate cause of the injury and death and for the purposes of the declaratory relief action establishes liability of the insured and an obligation of the insurer.[2]

I

■ We begin with the rule that construction of an insurance policy is a matter of law for the court where the underlying facts are not in dispute. (*Bareno* v. *Employers Life Ins. Co.* (1972) 7 Cal.3d 875, 881 [103 Cal.Rptr. 865, 500 P.2d 889]; *Stewart* v. *Estate of Bohnert* (1980) 101 Cal.App.3d 978, 985 [162 Cal.Rptr. 126].) Because no extrinsic evidence has been offered to explain the policy's terms, we will restrict our examination to the policy itself.

As we noted above, the Allstate policy consisted of two separate liability insurance agreements. The "Automobile Liability Agreement" provided cover-

---

[1]The parties agreed to use this set of stipulated facts only for the purpose of this declaratory relief action.

[2]Prior to this action Mrs. Jones filed suit individually and on behalf of her two daughters (each of which is a defendant in this action) against Alberts and Roseburrough for the wrongful death of Mr. Jones.

Pursuant to a settlement agreement entered into by the parties of the underlying litigation, Allstate paid, on behalf of its insured, the sum of $100,000 under the terms of the automobile liability insurance agreement portion of the policy. Allstate also agreed to bring this action for declaratory relief to determine its obligation, on behalf of Alberts, under the "General Comprehensive Liability Insuring Agreement."

In return, the Jones released Alberts and De Los Reyes from all claims relating to the death of Mr. Jones. Roseburrough, plaintiff in intervention and respondent, remains a defendant in the underlying action.

age for "all sums which the Insured shall become legally obligated to pay as damages because of . . . [¶] bodily injury or . . . [¶] property damage [¶] . . . arising out of the ownership, maintenance or use, including loading and unloading, of any automobile . . . ."

The "Comprehensive General Liability Agreement" provided coverage for "all sums which the insured shall become legally obligated to pay as damages because of . . . [¶] bodily injury or . . . [¶] property damage [¶] to which the insurance applies, caused by an occurrence . . . ." Yet this same agreement contained the following exclusion. "This insurance does not apply: . . . (b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile . . . owned or operated by or rented or loaned to any insured, or (2) any other automobile . . . operated by any person in the course of his employment by any insured . . . ."

Defendants argue that the "General Liability Agreement" provides coverage for the accident in question despite the clear language set forth in the exclusion. Their argument stems from a misinterpretation of *State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, and its progeny.

In *Partridge,* two separate insurance policies were at issue: a homeowner's policy which provided for general comprehensive liability coverage and an automobile liability policy. Mr. Partridge was himself a negligent hunter of jackrabbits. His first act of negligence was filing the trigger on his .357 magnum pistol to lighten its pull and give it a "hair trigger." His second act of negligence was in driving his Ford Bronco off of the paved road and onto bumpy, uneven ground in pursuit of his prey. The combination of the two negligent acts resulted in the gun's accidental firing. The bullet struck Partridge's female passenger, resulting in her paralysis.

The California Supreme Court held that the accident was covered by both the homeowner and automobile policies. There was no question that the auto insurance applied, due to well establised case law which broadly construes language in auto insurance contracts. The homeowner's policy, however, contained an exclusionary clause which denied coverage for injuries "arising out of the . . . use of . . . any motor vehicle." The court noted that exclusionary clauses are narrowly drawn against the insured and may not bar recovery under two policies "in ambiguous situations."

Yet the court decided to base its decision to extend coverage under the homeowner's policy on stronger ground. It reasoned that when two, independent, negligent acts concur to produce one injury, each act should be viewed separately to determine policy coverage. In *Partridge,* the negligent act of fil-

ing the trigger was not related to the use of an automobile. It created a serious hazard totally apart from the use of the car which was, itself, a proximate cause of the resulting injuries. "[A]lthough the accident occurred in a vehicle, the insured's negligent modification of the gun suffice[d], in itself, to render him fully liable for the resulting injuries." (*Id.*, at p. 103.) Because the homeowner's insurance policy covered "non-auto-related risks," it also applied to the accident.

Defendants cite two additional cases, each of which relied on *Partridge,* to support their position. In *Glens Falls Ins. Co.* v. *Rich* (1975) 49 Cal.App.3d 390 [122 Cal.Rptr. 696], the Court of Appeal for the First District had a case before it analogous to *Partridge.* The insured maintained homeowner's liability insurance with an exclusionary clause for auto-related injuries. While on a hunting trip, the insured placed a loaded shotgun under the front seat of his automobile. He brought the Travelall to a stop and reached underneath the seat to get the gun. The gun accidentally fired and injured his passenger.

In finding coverage under the homeowner's policy, the court applied the reasoning set forth in *Partridge* and noted that "[t]he issue . . . [is] whether the accident arose out of the use of the vehicle *and whether that accident arose solely from that use.*" (*Id.*, at p. 396, italics added.) It then found that the insured's negligence was putting a loaded gun in a hazardous position, and that this negligence did not arise solely out of the use of an automobile.

In *State Farm Fire & Cas. Co.* v. *Kohl* (1982) 131 Cal.App.3d 1031 [182 Cal.Rptr. 720], the Second District Court of Appeal applied the rationale in *Partridge* to an insurance case arising out of an automobile collision. The insured maintained an automobile liability policy and a homeowner's liability policy with an exclusion for injuries arising out of the use of an automobile. The insured was driving his car when he collided with Kohl who was riding her motorcycle. After the initial collision the insured dragged Kohl out of the street, causing her further injury. Kohl attempted to recover for the additional injuries under the homeowner's liability policy. The court held the homeowner's policy applicable because the dragging of the victim away from the scene was a separate act of negligence, unrelated to the use of an automobile.

In conclusion, the court quoted language from *Partridge* which we believe is helpful to our analysis in the instant case. "Thus, even if we assume that the connection of the car with the accident is the type of non-ambiguous causal relationship which would normally bring the exclusionary clause into play, the crucial question presented is whether a liability insurance policy provides coverage for an accident caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving). Defendants correctly contend that when two such risks constitute concurrent

proximate causes of an accident, the insurer is liable *so long as one of the causes is covered by the policy."* (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d at p. 102, italics added.)

It is clear when reviewing the facts set forth in *Partridge, Glens Falls,* and *Kohl* that one of the negligent acts which occurred did not depend upon the use of an automobile and, thus, did not fall within the exclusionary clause. In *Partridge* the gun was negligently altered so that any accidental jolt might cause it to fire. The injury in *Glens Falls* resulted from the hazardous manner in which the gun was stored. Kohl's injuries were exacerbated when she was negligently dragged from the scene of the accident.

In the case at bar, we have no alternative but to conclude that both of the acts of negligence which concurred to cause the death of Mr. Jones were auto-related. Defendants contend that we cannot so conclude because the parties stipulated that the first act of negligence was the failure of Alberts to properly "load, secure, fasten, supervise and inspect the rebar." Yet this argument ignores the obvious. Alberts' failure to inspect, etc. would not have been negligent were it not for his use of the truck. The stipulated failure to "load, secure, fasten, supervise and inspect the rebar" in a nonnegligent manner, implicitly refers to the failure to do so *on the truck.*

At first glance this depiction of Alberts' negligence might appear similar to that in *Glen Falls* where the insured improperly stored his gun in his Travelall. But the negligence in *Glens Falls* and the resulting accident did not depend upon his use of the automobile. Had he handled the gun improperly in any other place, a like accident might have occurred. In contrast, the improperly loaded rebar depended on the truck's movement and velocity to become a hazard.

In addition, only if the "liability of the insured arises from his non-auto-related conduct, *and exists independently of any 'use' of his car . . . "* (*State Farm Mut. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d at p. 103, italics added) will a general liability policy apply.

Alberts' truck was equipped to store and transport rebar. This was his intended and accustomed "use" of the truck. In a case so clear as this, the rule of construction that ambiguities in insurance contracts are interpreted in favor of the insured (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d at pp. 101-102; *Pacific Indem. Co.* v. *Truck Ins. Exch.* (1969) 270 Cal.App.2d 700, 703 [76 Cal.Rptr. 281]) does not dictate a different conclusion. (See *State Farm Fire & Cas. Co.* v. *Camara* (1976) 63 Cal.App.3d 48, 54 & fn. 3 [133 Cal.Rptr. 600].)

Consistent with our decision is the Third District Court of Appeal case, *State Farm Fire & Cas. Co. v. Camara, supra.* In *Camara,* the insured was covered by both a homeowner's liability policy, which contained the familiar "automobile exclusion," and an automobile liability policy. He negligently redesigned and reconstructed his Volkswagen into a dune buggy. While he was negligently driving the vehicle down a steep hillside it overturned and caused injury to his passenger. She attempted to obtain damages from the homeowner's policy, under *Partridge,* alleging that the negligent reconstruction of the vehicle was an independent, concurrent cause of the injuries.

The court declined to so misconstrue *Partridge,* but held that the negligent reconstruction was related to the "ownership" and "use" of the automobile. The insured's actions, therefore, fell within the policy's automobile exclusion. Because both of the independent acts of negligence which concurred to cause the injury were auto-related, there was no coverage for the accident under the homeowner's policy. (*Accord, National Indemnity Co. v. Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102 [157 Cal.Rptr. 98]; *United Services Automobile Assn. v. United States Fire Ins. Co.* (1973) 36 Cal.App.3d 765 [111 Cal.Rptr. 595].)[3]

## II

In addition to the foregoing, we gain further support for our conclusion by noting " 'the intent and reasonable expectations of the parties in entering into the agreement.' " (*Herzog v. National American Ins. Co.* (1970) 2 Cal.3d 192, 197 [84 Cal.Rptr. 705, 465 P.2d 841], citations omitted.) Upon reviewing the insurance policy, we are convinced that the overlapping coverage proposed by defendants was not within the intent or reasonable expectations of the parties when they entered into the contract. The policy contained two, separate agreements. The automobile liability agreement provided coverage for injuries "arising out of the ownership, maintenance or use, including loading and unloading, of any automobile. . . ." The general liability policy provided coverage for nonauto-related accidents. It strains reason to conclude that Alberts expected his general liability policy to provide him coverage when two acts of negligence involving his automobile concurred to cause Mr. Jones' death. If he had expected it to so provide, he would not have maintained separate automobile insurance. (*Herzog v. National American Ins. Co., supra,* 2 Cal.3d at p. 197; *State Farm Fire & Cas. Co. v. Camara, supra,* 63 Cal.App.3d at pp. 51, 52, citations omitted.)

---

[3]Plaintiff in intervention and respondent, Roseburrough, relies in large part on *Gonzalez v. St. Paul Mercury Ins. Co.* (1976) 60 Cal.App.3d 675 [131 Cal.Rptr. 626], which held that a homeowner's liability policy provided coverage for an accident arising out of the insured's negligent repair of his brakes. *Gonzalez* was found to conflict with the reasoning set forth in *Camara* and was disapproved by that court. (63 Cal.App.3d at pp. 55-56.) Because we approve the *Camara* court's reasoning, we join with it in disapproving *Gonzalez.*

## III

We conclude that neither the rationale set forth in *Partridge* nor the reasonable expectations of the parties supports the trial court's ruling. The judgment is reversed and remanded.

The trial court is directed to make the following findings as a matter of law based upon the joint set of stipulated facts.

1) The negligent loading, securing, fastening, supervising and inspection of the rebar was auto-related and excluded from coverage under the general liability agreement.

2) The reasonable expectation of Alberts and Allstate when entering into the contract precludes the double coverage contended for by Jones.

We, further, direct the trial court to enter judgment for plaintiff and appellant, Allstate.

McDaniel, J., and Trotter, J.,* concurred.

The petitions of all respondents for a hearing by the Supreme Court were denied March 29, 1983. Bird, C. J., and Mosk, J., were of the opinion that the petitions should be granted.

---

*Assigned by the Chairperson of the Judicial Council.