[No. D007747. Fourth Dist., Div. One. Apr. 17, 1989.]

NATIONAL AMERICAN INSURANCE COMPANY OF
CALIFORNIA, Plaintiff and Respondent, v.
KEVIN COBURN et al., Defendants and Appellants.

## COUNSEL

Grace & Neumeyer and Kenneth D. Huston for Defendants and Appellants.

Haasis, Pope & Correll, Carmela F. Simoncini and Robert D. Closson for Plaintiff and Respondent.

## OPINION

**TODD, J.**—The issue in this case is whether, under an exclusionary clause relating to motor vehicle use and loading, a homeowner's policy of insurance issued by National American Insurance Company of California (National) to Richard C. Usher excludes coverage for a tragic accident in which two-and-one-half-year-old Graham Coburn was killed. The accident occurred when a child entered the open van Usher had parked in his driveway without setting its parking brake and the child released the transmission lever from the "park" position, putting the van in motion. At the time, Usher was inside his residence picking up clothing and personal belongings after loading the van with camping equipment for a camping trip. About

five minutes before the accident, Usher had left the van with its sliding side door open.

Kevin and Holly Coburn (Coburn), the parents of Graham Coburn, sued Usher and his wife, Mary, for wrongful death and negligence. (Super. Ct. No. N 28698.) National defended the action under a reservation of rights and filed the present action for declaratory relief seeking a declaration National owed no duty to defend or indemnify the Ushers with respect to any damages arising out of the underlying action brought by Coburn. National's complaint names Unigard Insurance Co. (Unigard) as a defendant along with the Ushers and Coburn and alleges Coburn made a claim against the uninsured motorist provision of their own automobile insurance policy with Unigard. Unigard and Coburn answered the complaint.

In the declaratory relief action both sides moved for summary judgment. The trial court ruled National has no duty to defend the Ushers and no duty to indemnify or pay any damages, judgment or award in favor of the Ushers, Coburns or Unigard in connection with the accident.

We conclude that under applicable California decisional law and the insurance policy exclusion in question there is no coverage under the policy and the judgment must be affirmed.

## FACTS

The homeowner's insurance policy National issued to the Ushers, effective between March 24, 1984, and March 24, 1985, includes personal liability coverage, labeled "COVERAGE E PERSONAL LIABILITY," reading as follows: "If a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* or *property damage* to which this coverage applies, we will:

"a. pay up to our limit of liability for the damages for which the insured is legally liable; and

"b. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability." (Original italics.)

Exclusionary language in the policy that is pertinent to this case reads, as follows: "1. *Coverage E- Personal Liability and Coverage F- Medical Payments to Others* do not apply to *bodily injury* or *property damage*:

"_. . . . . . . . . . . . . . . . . . . .

"e. arising out of the ownership, maintenance, use, loading or unloading of:

"_. . . . . . . . . . . . . . . . . . . .

"(2) a _motor vehicle_ owned or operated by, or rented or loaned to any _insured_; . . ." (Original italics.)

On August 24, 1984, the Ushers possessed a 1980 Chevrolet van given them in January 1983 as collateral for a loan. The van was parked in the Ushers' driveway with the transmission lever in the "park" position but without the parking brake set.

Usher was in the process of loading the van with camping equipment. He went into the house to pick up clothing and other personal belongings his wife had packed, leaving open the sliding side door of the van.

At the time, Coburn's children, two-and-one-half-year-old twins Graham and Corrine and three-and-one-half-year-old Jacob, were playing with the Ushers' three-year-old sons, Ricky and Evan. While Usher was in the house collecting his personal belongings, a child playing in the unattended van moved the shift lever from the "park" position causing it to roll backward down the incline of the driveway. The van rolled over Graham Coburn, killing him.

Coburn's complaint for wrongful death and negligence alleges Ushers negligently (a) "failed to supervise decedent and the other children, exposing said children to the hazard of a vehicle parked on an incline with its doors open without its parking brake being set," and (b) "left the doors open on a vehicle which was parked on an incline, without setting the parking brake, and with full knowledge that decedent, his sister and defendants' two sons, all of whom were between two (2) and four (4) years of age, were playing in the immediate area."

In ruling for National on its summary judgment motion in the present declaratory relief action, the trial court stated: "They [Ushers] were using the vehicle. They were using it as their own. They were packing it for some sort of camping trip. They had backed it up and putting in [_sic_] some camping equipment when this tragedy occurred."

Thus by necessary implication the trial court held the bodily injury claim for Graham Coburn's death arose out of Usher's use and loading of a motor vehicle, the van, operated by the Ushers.

## Discussion

 Relying on *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123] and certain cases from other states, Coburn contends the child's act of moving the shift lever from "park" is not a "use" of the vehicle within the meaning of the exclusionary clause of the policy and the Ushers' alleged negligent supervision of the children was independent of any act excluded by the policy. Accordingly, Coburn contends, applying the general rule that coverage clauses of an insurance policy are interpreted broadly so as to afford the greatest possible protection to the insured and exclusionary clauses are interpreted narrowly against the insurer (*id.* at pp. 101-102), the homeowner's policy provides defense and indemnity coverage in connection with the accident in question and the judgment should be reversed.

Applying principles enunciated in certain cases since *Partridge,* we conclude the alleged liability of the Ushers does not arise from their nonauto-related conduct *and* exist independently of any use of their vehicle. Thus the homeowner's policy does not afford coverage for that alleged liability. Cases such as *Safeco Ins. Co.* v. *Gilstrap* (1983) 141 Cal.App.3d 524 [190 Cal.Rptr. 425], involving a theory of liability of negligent entrustment of a vehicle to a minor child of the insured; *National Indemnity Co.* v. *Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102 [157 Cal.Rptr. 98], involving negligent supervision of a child during unloading of a vehicle; and *State Farm Fire & Cas. Co.* v. *Camara* (1976) 63 Cal.App.3d 48 [133 Cal.Rptr. 600], involving negligent conversion of a vehicle into a "dune buggy," guide us to the conclusion the negligence alleged here does not exist independently of the use and loading of the vehicle by Usher.

In *Partridge,* the insured negligently modified a gun's trigger mechanism by filing it to lighten the trigger pull so that the gun had a "hair trigger." One evening the insured went hunting jackrabbits, using the gun to shoot at them out the window of his four-wheel-drive vehicle. The insured spotted a jackrabbit that ran off to the side of the road. To keep the jackrabbit in the car's headlights the insured negligently drove off the paved road and onto the adjacent rough terrain. When the vehicle hit a bump, the gun discharged, shooting and paralyzing the insured's passenger, Vanida.

The legal issue in *Partridge* was whether, in addition to the unquestioned coverage under the automobile liability policy for the use of the vehicle constituting a proximate cause of the accident, the homeowner's policy with its exclusion of coverage for injuries "arising out of the . . . use . . . of a motor vehicle" could also cover the liability. (See *Partridge, supra,* 10 Cal.3d 94, 101.) The court held there was coverage under the homeowner's

policy, stating in part: "In issuing the homeowner's policy to Partridge, State Farm agreed to protect the insured against liability accruing from non-auto-related risks. The insurer does not deny that Partridge's negligence in filing the trigger mechanism of his gun was a risk covered by the homeowner's policy; thus if the gun had accidently fired while the insured was walking down the street or running through the woods, the insurer admits that any resultant damage would clearly be covered by the policy. The insurer contends, nonetheless, that coverage is foreclosed here because the present accident arose out of the use of an automobile.

"In the instant case, however, although the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries. Under these facts the damages to Vanida are, under the language of the homeowner's coverage clause, 'sums which the Insured . . . [became] legally obligated to pay' because of the negligent filing of the trigger mechanism; *inasmuch as the liability of the insured arises from his non-auto-related conduct, and exists independently of any 'use' of his car, we believe the homeowner's policy covers that liability.*

"A hypothetical may serve to explain further our conclusion in this regard. If, after negligently modifying the gun, Partridge had lent it to a friend who had then driven his own insured car negligently, resulting in the firing of the gun and injuring of a passenger, both Partridge and his friend under traditional joint tortfeasor principles would be liable for the injury. In such circumstances, Partridge's personal liability would surely be covered by his homeowner's policy, and his friend's liability would be covered by automobile insurance." (10 Cal.3d at p. 103, italics added.)

■ Looking to the above-underscored language of *Partridge* as the key aspect of its holding, cases decided after *Partridge* repeatedly follow the rule that "in order for *Partridge* to apply, there must be two negligent acts or omissions of the insured, one of which, *independently of the excluded cause,* renders the insured liable for the resulting injuries. [Citations.]" (*Daggs* v. *Foremost Ins. Co.* (1983) 148 Cal.App.3d 726, 730 [196 Cal.Rptr. 193], italics added.)

■ Here, the alleged negligence consisting of the Ushers' failure to properly supervise the children, exposing them to the hazard of a vehicle parked on an incline with its doors open and without its parking brake set, and Usher's leaving the vehicle's doors open while it was parked on an incline without setting the parking brake, could not render the Ushers liable for Graham Coburn's death independently of Usher's use and loading of the vehicle. All the alleged negligence arose from the Ushers' auto-related

conduct, i.e., the use and loading of the van for the camping trip. It cannot be seriously argued that the parking, leaving open and braking of a vehicle are anything other than aspects of the "use" of the vehicle. None of the alleged negligence, including the negligent supervision of the children, exists independently of Usher's use and loading of the vehicle. Under the exclusionary clause the personal liability claim arose out of the use and loading of the van, a motor vehicle operated by the insured Usher.[1]

Certain analogous cases demonstrate the correctness of this conclusion. In *Safeco Ins. Co. v. Gilstrap, supra,* 141 Cal.App.3d 524, a 14-year-old boy removed his older brother's motorcycle from his parents' garage and took a girl, referred to as the plaintiff, for a ride. The plaintiff was injured when the motorcycle operated by the boy collided with another motorcycle. The homeowner's policy in question contained the identical exclusionary clause language as the policy we consider here. The trial court concluded the insurer had no duty to defend or indemnify as to the claim against the son for negligent operation of the motorcycle. However, the trial court ruled there was coverage under the policy on the claim against the boy's parents, the Gilstraps, based on a cause of action for negligent entrustment.

The Court of Appeal reversed with directions to enter judgment for the insurer. Applying the key principle of *Partridge* relating to independent acts giving rise to liability, described above, *Gilstrap* states, in part: "The separate and independent act in *Partridge* giving rise to liability was a 'non-auto-related act,' i.e., the filing of the gun trigger. That act had nothing to do with the use or operation of a vehicle. In contrast to *Partridge,* the obligation of the insureds in this case did not arise from an act separate and independent from the use of the vehicle itself. The conduct of the Gilstraps in negligently entrusting the vehicle to their minor son was an act separate only in the fact that it preceded the collision. This conduct cannot be disassociated from the use of the vehicle itself. Conduct which is dependent upon and related to the use of the vehicle cannot be deemed an independent act of a homeowner under the homeowner's coverage as provided in the policy. [Citations.]" (*Gilstrap, supra,* 141 Cal.App.3d at pp. 527-528.)

Similarly here, the conduct of the Ushers in negligently supervising the children playing around the open van was an omission separate from the use of the vehicle only in terms of time and it cannot be disassociated from

---

[1] In the trial court the parties argued the question of whether the exclusionary clause was inapplicable because the van and its pink slip were held by the Ushers as collateral for a loan so that it was not a "motor vehicle owned or operated by, or rented or loaned to any insured" under the exclusionary clause. However, this point is not urged on appeal. It seems apparent under the undisputed facts here that at a minimum the van was a "motor vehicle . . . operated by . . . any insured," here Usher.

the use of the vehicle itself, particularly when consideration is given to the parking, leaving open and braking bases of the alleged liability.

■ ■ ■ ■ *Gilstrap* contains an exhaustive review of cases dealing with vehicle-related conduct in the context of exclusionary clauses in insurance policies providing no coverage for vehicle use.[2] One of the cases *Gilstrap* describes is *National Indemnity Co.* v. *Farmers Home Mutual Ins. Co., supra,* 95 Cal.App.3d 102, involving a liability theory of negligent supervision in connection with the use and unloading of a motor vehicle. *Gilstrap* describes that case as follows: "The necessity for independent nonvehicular conduct in order to avoid the standard exclusionary clause was again emphasized in *National Indemnity Co.* v. *Farmers Home Mutual Ins. Co., supra,* 95 Cal.App.3d 102. There the insured was babysitting her five-year-old nephew and later drove him home. She parked across the street from the nephew's house. The child abruptly alighted from the parked vehicle and ran into the street where he was struck and killed[3] by another vehicle. The court rejected the claim that the insured's negligent failure to supervise the child constituted nonvehicular conduct. Instead, the court concluded that '[h]ere the act of the insured which gives rise to liability, if such liability is ultimately established, is her negligent failure to supervise and control the child during the unloading of the vehicle at a place well removed from the insured's premises. . . . [¶] There is a complete absence of conduct on the part of the insured which is independent of and unrelated to the "use" of the vehicle. The conduct of the insured which contributed to the injury simply cannot be dissociated from the use of the vehicle. Nor did the injury, insofar as the insured is concerned, involve an instrumentality other than the vehicle itself. [Citation.] This being so, the exclusion clause in the Farmers homeowners policy must be given effect.' (*Id.,* at pp. 108-109.)" (*Gilstrap, supra,* 141 Cal.App.3d at p. 529.)

Here, as in *National Indemnity, supra,* 95 Cal.App.3d at page 109, there "is a complete absence of conduct on the part of the insured which is independent of and unrelated to the 'use' of the vehicle."

---

[2]Although the point is of no particular significance in this case, it should be noted the "use" of a vehicle includes its loading (and unloading). (*International Business Machines Corp.* v. *Truck Ins. Exch.* (1970) 2 Cal.3d 1026, 1029 [89 Cal.Rptr. 615, 474 P.2d 431].) Of more significance to this case is that when considering what is loading or unloading, California follows a concept called the "complete operation" doctrine, a broad concept embracing all the operations which are required in any specific situation to effect a complete delivery of an article—the number of temporary or intermediate stops or resting places is immaterial. (*Entz* v. *Fidelity & Casualty Co.* (1966) 64 Cal.2d 379, 382 [50 Cal.Rptr. 190, 412 P.2d 382].)

[3]The child was injured, not killed. (See *National Indemnity, supra,* 95 Cal.App.3d at pp. 105, 107.)

Though factually dissimilar, the well-reasoned decision in *State Farm Fire & Cas. Co.* v. *Camara, supra,* 63 Cal.App.3d 48 is instructive in its application of the *Partridge* rule as to when the vehicle use exclusionary clause does or does not operate. In *Camara* the theory of liability was the insured's negligent design, construction and assembly of a dune buggy which the insured negligently operated while out on a hunting trip with the result the vehicle overturned, injuring the passenger.

*Camara* first held the negligent design, construction and assembly which caused or contributed as a cause to the injury arose out of the ownership and "use" of the vehicle and thus there was no coverage due to the exclusionary clause of the homeowner's policy. (63 Cal.App.3d at pp. 53-54.) In this connection the court followed the rule that the term "use" is not confined to motion on the highway, but "'. . . extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured.'" (*Id.* at p. 54, quoting *Pacific Indem. Co.* v. *Truck Ins. Exch.* (1969) 270 Cal.App.2d 700, 703 [76 Cal.Rptr. 281].)

*Camara* then observed: "[*T*]*he injury in the instant case did not involve an instrumentality other than and separate from the vehicle itself.* Under the undisputed facts, the accident would not have happened *but for* the defendant's design and construction of the dune buggy. But it does not follow that the accident did not *arise out of the operation or use of* a motor vehicle. The facts show the contrary. As *Partridge* held, *the nonvehicle-related cause must be independent of the vehicle-related cause in order for the liability to be covered by the homeowner's policy.* Although the operation or use of the dune buggy was not the sole cause of the accident, *any contributing design cause was dependent upon such operation or use, such that any liability for negligent design necessarily arose out of the operation or use of the motor vehicle.*

"*In other words, the only way in which plaintiff could have been exposed to the claimed design risk was through the operation or use of the motor vehicle.* Under such circumstances defendant's asserted liability could not but arise out of the ownership, maintenance, operation or use of the vehicle; it was therefore excluded." (*Camara, supra,* 63 Cal.App.3d at pp. 54-55, italics added, fn. omitted.)

Substituting "supervision" for "design" in the last two underscored phrases for purposes of the case we consider here leads to the same conclusion, i.e., Usher's asserted liability arose out of the use of the vehicle and was thus excluded.

In disagreeing with *Gonzalez* v. *St. Paul Mercury Ins. Co.* (1976) 60 Cal.App.3d 675 [131 Cal.Rptr. 626], which involved facts similar to those in *Camara,* the court gave an example pertinent to this case when it said that if an insured "fails to apply the hand brake when parked on a hill (as a result of which it rolls uncontrolled down the hill)," such an act "unquestionably arises out of the ownership, maintenance, operation, use, etc. of the vehicle." (*Camara, supra,* 63 Cal.App.3d at p. 55.) *Camara* concluded, "the Supreme Court's very clear pronouncement in *Partridge* [is] that for the homeowner's policy to cover the loss, the liability must arise from nonvehicular conduct and must exist independently of use or ownership of a vehicle." (*Id.* at p. 56.)

These features of coverage were not present in *Camara* and they are not present in this case. Thus, there is no coverage under the homeowner's policy under consideration.

We have considered the out-of-state cases *Coburn* cites.[4] In view of the consistent line of California authorities construing and applying *Partridge* as described above, to the extent the out-of-state cases hold otherwise they do not bind us.

We note *Partridge* apparently approved of the concept suggested in *Assurance Company of America* v. *Bell, supra,* 134 S.E.2d 540, 545, where the court stated "[t]he fact that the child unwittingly released the emergency brake while playing around the automobile is not such operation or use of the car as a motor vehicle as is contemplated by the exclusionary provision." (See *Partridge, supra,* 10 Cal.3d 94, 102, and p. 107, fn. 1 (dis. opn. of Clark, J.), "the act of insured's child entering a car and accidentally releasing the brakes was held not to be 'use' of the car.") We have no quarrel with that concept as applied to a child's conduct unaccompanied by any use or loading activity of the insured parent. █ Here, however, when the accident occurred the insured parent was clearly in the process of loading the van. Usher was in the house picking up clothes and personal belongings for the camping trip less than five minutes after first loading the van with camping equipment. Since Usher was loading the vehicle, under the exclusionary clause the homeowner's policy did not provide coverage.

---

[4] Coburn cites *Assurance Company of America* v. *Bell* (1963)108 Ga.App. 766 [134 S.E.2d 540]; *Erie Ins. Exch.* v. *Transamerica Ins.* (1987) 516 Pa. 574 [533 A.2d 1363]; *Frazier* v. *State Farm Mut. Auto. Ins. Co.* (La.Ct.App. 1977) 347 So.2d 1275; and *Tucker* v. *State Farm Mutual Automobile Ins. Co.* (La.Ct.App. 1963) 154 So.2d 226.

## DISPOSITION

Judgment affirmed.

Kremer, P. J., and Froehlich, J., concurred.