**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ENCOMPASS INSURANCE COMPANY, an Illinois Corporation; GLENS FALLS INSURANCE COMPANY, an Illinois Corporation, *Plaintiffs-Appellants*, | No. 12-55784 |
| | D.C. No. 2:10-cv-06421-GHK-PJW |
| v. | |
| COAST NATIONAL INSURANCE COMPANY, a corporation; MID-CENTURY INSURANCE COMPANY, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Central District of California
George H. King, Chief District Judge, Presiding

Argued and Submitted
February 6, 2014—Pasadena, California

Filed August 13, 2014

Before:  Harry Pregerson, Michael R. Murphy[*],
and N. Randy Smith,[**] Circuit Judges.

Opinion by Judge Pregerson;
Dissent by Judge Murphy

**SUMMARY**[***]

**California Insurance Law**

The panel reversed the district court's judgment in a diversity insurance coverage action concerning coverage for injuries sustained as part of an automobile accident.

The panel held that unloading an injured passenger from a motor vehicle constituted "use" of that motor vehicle under California law.  Specifically, the panel held that as used in the insurance policies at issue, the term "use" was defined by California Insurance Code § 11580.06(g).  The panel further held that as defined by California Insurance Code § 11580.06(g), "use" of an automobile included unloading

---

[*] The Honorable Michael R. Murphy, Senior Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

[**] Judge Berzon was originally a member of the panel, but recused herself after oral argument.  Judge N.R. Smith was drawn to replace her. He has read the briefs, reviewed the record, and listened to the audio recording of oral argument.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

that automobile, and therefore, the car in this case was "used" when the injured passenger was removed.

Tenth Circuit Judge Murphy dissented, and he would hold that unloading the passenger did not constitute use of the vehicle because the person unloading the passenger did not avail herself of the vehicle simply by unloading it.

## COUNSEL

Daniel P. Barer (argued), Girard Fisher, and Scott J. Vida, Pollak, Vida & Fisher, Los Angeles, California, for Plaintiffs-Appellants.

Limor Lehavi (argued) and Mariyetta A. Meyers-Lopez, Archer Norris, APLC, Newport Beach, California, for Defendants-Appellees.

## OPINION

PREGERSON, Circuit Judge:

We must decide whether unloading an injured passenger from a motor vehicle constitutes "use" of that motor vehicle, under California law.  We conclude that it does.

### BACKGROUND

This case arises out of an automobile accident.  Alexandra Van Horn was a passenger in a car driven by a man named Anthony Glen Watson.  Watson lost control of his vehicle;

the car ran off the road and crashed into a light pole. A second car, which was not involved in the crash, stopped at the scene of the accident to render aid. A woman named Lisa Torti was a passenger in the second car. Torti saw Van Horn inside the wrecked car, and allegedly feared that Van Horn might be in danger. (Torti later testified that Watson's car was smoking and leaking fluid, causing her to fear that the car might catch fire or explode.) Torti grabbed Van Horn and physically removed her from Watson's car.

Van Horn suffered severe spinal injuries after the car accident, and became a paraplegic. Van Horn sued Torti in California state court, alleging that Torti caused Van Horn's injuries when she removed Van Horn from Watson's car. *See Van Horn v. Watson*, 197 P.3d 164, 166 (Cal. 2008).[1]

At the time of the accident, Torti was insured under a "Package Policy" — including car insurance, homeowners insurance, and personal excess liability insurance — issued by Encompass Insurance Company.[2] Torti tendered her defense against Van Horn's lawsuit to Encompass. Encompass accepted the tender, and assumed responsibility for Torti's defense.

---

[1] Our account of the car accident is drawn from the California Supreme Court's opinion in *Van Horn*.

[2] Torti's Package Policy was actually jointly issued by Encompass and Glens Falls Insurance Company, also a Plaintiff in this action. Encompass later assumed all of Glens Falls's rights and responsibilities under Torti's Package Policy. For convenience, we — like the parties and the district court — refer only to Encompass.

Torti also sought to tender her defense to two additional insurance companies — Mid-Century Insurance Company and Coast National Insurance Company.

Mid-Century had issued a car insurance policy to Torti. The Mid-Century policy covered "damages for which an insured person is legally liable because of bodily injury to any person . . . arising out of the . . . use of a private passenger car . . . ." Though Torti obtained the Mid-Century policy in connection with her own car (which was not involved in the accident), the policy also covered Torti's "use" of "any other private passenger car" — if such "use" was "with the permission of the owner." Thus, if Torti "used" Watson's car with Watson's permission when she removed Van Horn from Watson's car, the Mid-Century policy covered Torti.

Coast National had issued a car insurance policy to Watson, the driver of the car that crashed. The Coast National policy covered liability for personal injuries "for which any 'insured' becomes legally responsible because of an accident." The policy insured not only Watson, but also "[a]ny person using '[Watson's] covered auto' with [Watson's] permission." Thus, if Torti "used" Watson's car with Watson's permission when she removed Van Horn from Watson's car, the Coast National policy also covered Torti.

Both Mid-Century and Coast National rejected Torti's tender, refusing to accept any responsibility for her legal defense. Encompass continued to bear sole responsibility for Torti's defense, and ultimately settled Van Horn's claims against Torti for $4 million.

After settling Van Horn's lawsuit against Torti, Encompass brought this lawsuit against Mid-Century and

Coast National.    In this lawsuit, Encompass seeks contribution or subrogation for the expenses Encompass incurred in its defense and indemnification of Torti. Encompass argues that Mid-Century and Coast National had their own duty to defend and indemnify Torti:  according to Encompass, the Mid-Century and Coast National insurance policies covered Torti when Torti removed Van Horn from Watson's car, because that act constituted permissive "use" of Watson's car.  Mid-Century and Coast National deny that their insurance policies covered Torti, arguing that Torti did not engage in permissive "use" of Watson's car.

The district court entered judgment in favor of Mid-Century and Coast National.[3]  The district court reasoned that Torti did not "use" Watson's car when she removed Van Horn from that car.  The district court did not reach the issue of permission.

This appeal followed.

## JURISDICTION

The district court had jurisdiction over this diversity action under 28 U.S.C. § 1332.   We have appellate jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

"California's substantive insurance law governs in this diversity case."    *West v. State Farm Fire & Cas. Co.*,

---

[3] The parties dispute the precise nature of the district court's ruling.  We need not resolve this dispute, because we would reverse the district court's judgment in any event.

868 F.2d 348, 350 (9th Cir. 1989).  Whether an issue is a question of law or a question of fact is a substantive question, to which state law applies.  *See Wilcox v. Arpaio*, 753 F.3d 872, 875 (9th Cir. 2014).  Once we determine whether an issue is a question of law or a question of fact, however, "the proper standard of review is a question of federal procedure and is governed by federal law."  *West*, 868 F.2d at 350.

"[I]nterpretation of an insurance policy is a question of law . . . ."  *Ameron Int'l Corp. v. Ins. Co. of State of Penn.*, 242 P.3d 1020, 1024 (Cal. 2010).  We review questions of law de novo.  *Matter of McLinn*, 739 F.2d 1395, 1403 (9th Cir. 1984) (en banc).

## DISCUSSION

We must decide whether Torti "used" Watson's car when she removed Van Horn from that car.  The parties do not dispute that Torti "unloaded" Van Horn from Watson's car.  Thus, we must decide whether "unloading" an injured passenger from an automobile constitutes "use" of that automobile, within the meaning of Mid-Century's and Coast National's insurance policies.  We conclude that it does.

In this case, determining the meaning of the term "use" is an exercise in statutory construction.  The relevant language in the Mid-Century and Coast National insurance policies is required by the California Insurance Code:  "With some exceptions, Insurance Code section 11580.1, subdivision (b)(4) requires every automobile liability insurer to provide permissive user coverage to the same extent as that afforded to the named insured."  *Haynes v. Farmers Ins. Exch.*, 89 P.3d 381, 391 (Cal. 2004); *see* Cal. Ins. Code § 11580.1(b)(4).  Language required by the California

Insurance Code "must be construed to effect not the intent of the parties, but the intent of the Legislature.  Therefore, the rules of statutory construction apply."  *Galanty v. Paul Revere Life Ins. Co.*, 1 P.3d 658, 662 (Cal. 2000).  Thus, to determine whether "unloading" a motor vehicle constitutes "use" of that motor vehicle as defined in the insurance policies at issue here, we must determine whether the California Insurance Code defines "unloading" a motor vehicle as "use" of that motor vehicle.

The text of the California Insurance Code makes clear that "unloading" a motor vehicle constitutes "use" of that motor vehicle.  The California Insurance Code provides, in relevant part:  "The term 'use' when applied to a motor vehicle shall only mean operating, maintaining, loading, *or unloading* a motor vehicle."  Cal. Ins. Code § 11580.06(g) (emphasis added).  Section 11580.06(g) unambiguously equates the "unloading" of a motor vehicle with the "use" of a motor vehicle, and our inquiry should end there.  *See Kavanaugh v. W. Sonoma Cnty. Union High Sch. Dist.*, 62 P.3d 54, 59 (Cal. 2003) ("If the language of the statute is not ambiguous, the plain meaning controls . . . .").

As one would expect from the text of section 11580.06(g), California courts consistently define "use" of a vehicle to include "unloading."  *See Scottsdale Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 30 Cal. Rptr. 3d 606, 613 (Cal. Ct. App. 2005) ("As a matter of law, [an injured person] was using the insured truck if he was 'operating, maintaining, loading, or unloading' it.") (citing Cal. Ins. Code § 11580.06(g)); *City of Los Angeles v. Allianz Ins. Co.*, 22 Cal. Rptr. 3d 716, 719–20 (Cal. Ct. App. 2004) ("The City contends it was a 'user' of the truck under the controlling case law, which holds that 'use' of a vehicle includes its

loading and unloading. From this principle, which is correct . . . .") (internal citation omitted); *Nat'l Am. Ins. Co. v. Coburn*, 257 Cal. Rptr. 591, 596 n.2 (Cal. Ct. App. 1989) ("[T]he 'use' of a vehicle includes its loading (and unloading)."). We can find no case adopting the dissent's theory that, under section 11580.06(g), "the unloading of a vehicle constitutes use of the vehicle only when the unloading is part of the user's act of availing herself of the vehicle." Dissenting Opinion at 14. On the contrary, California courts have consistently said that "unloading" a vehicle — without more — constitutes "use."

Mid-Century and Coast National, for their part, argue that "unloading" a motor vehicle only constitutes "use" of that motor vehicle if the unloading is "integral to the function of the vehicle as a means of transport," so that the person doing the unloading "gain[s] a benefit" from the vehicle. Mid-Century and Coast National point to *Travelers Insurance Co. v. Northwestern Mutual Insurance Co.*, which held that performing maintenance on a motor vehicle (without more) was not necessarily "use" of the motor vehicle. 104 Cal. Rptr. 283, 288 (Cal. Ct. App. 1972). This argument fails, for two reasons.

First, *Travelers* can tell us nothing about the definition of "use" under section 11580.06(g): *Travelers* was decided in 1972, and section 11580.06(g) was not enacted until 1984. *See* 1984 Cal. Stat. ch. 341, § 3. To the extent that *Travelers* is inconsistent with section 11580.06(g), we are bound by section 11580.06(g), and not by *Travelers*.

Second, and more fundamentally, there is no conflict between *Travelers* and the idea that "unloading" a vehicle constitutes "use" of that vehicle. Even if *Travelers* does limit

the circumstances under which "maintaining" a vehicle constitutes "use" of that vehicle, *Travelers* imposes no such limitations on "unloading." On the contrary, *Travelers* itself accepted the observation that "'use' has also been defined to mean loading and unloading of a motor vehicle." *Travelers*, 194 Cal. Rptr. at 286 (quoting *Yandle v. Hardware Mut. Ins. Co.*, 314 F.2d 425, 437 (9th Cir. 1963)). Indeed, even before the enactment of section 11580.06(g), California courts understood unloading a motor vehicle to constitute "use" of that motor vehicle. *See Argonaut Ins. Co. v. Transp. Indem. Co.*, 492 P.2d 673, 678 (Cal. 1972) (in bank) ("the 'use' of a vehicle includes its loading and unloading").

Defendants' attempt to distinguish *Argonaut* falls short. Even if the alleged tortfeasor in Argonaut did "gain[] a benefit" from the use of the vehicle as a means of transportation, that fact played no role in the California Supreme Court's decision. Nor was the court concerned with whether a nexus existed between the unloading and the individual's operation of the vehicle. Dissenting Opinion at 17. Instead, *Argonaut* examined only whether the person unloading the vehicle "was actually doing the unloading" — whether he was "actively engaged in either loading or unloading." *Argonaut*, 492 P.2d at 678–79.

The dissent seeks to draw a distinction between commercial vehicles (for example, the truck in *Argonaut*) and other kinds of vehicles — suggesting that unloading the former is "use," but that unloading the latter may not be. *See* Dissenting Opinion at 15. We are not convinced. The text of section 11580.06(g) does not distinguish between commercial and non-commercial vehicles: "[t]he term 'use' when applied to a *motor vehicle* shall only mean operating, maintaining, loading, or unloading a *motor vehicle*." Cal. Ins. Code

§ 11580.06(g) (emphasis added).  And the same section of the California Insurance Code defines "motor vehicle" as "*any vehicle* designed for use principally upon streets and highways and subject to motor vehicle registration under the law of this state."  *Id.* § 11580.06(a) (emphasis added).

Nor do the California courts seem to have adopted the dissent's distinction between commercial and non-commercial vehicles, in the context of unloading.  In at least two cases, California courts have held that unloading non-commercial vehicles constituted "use" of those vehicles.  In one case, a dog "unloading itself" from a "fourdoor sedan" constituted "use" of that sedan.  *Hartford Accident & Indem. Co. v. Civil Serv. Emps. Ins. Co.*, 108 Cal. Rptr. 737, 739, 742 (Cal. Ct. App. 1973).  In another case, "the process of unloading a child" from a two-door sedan likewise constituted "use."  *Nat'l Indem. Co. v. Farmers Home Mut. Ins. Co.*, 157 Cal. Rptr. 98, 99–101 (Cal. Ct. App. 1979).

In short, the plain text of section 11580.06(g) equates "unloading" a vehicle with "use" of that vehicle. Today, after the enactment of section 11580.06(g), California courts consistently define "use" of a vehicle to include "unloading" that vehicle.   Even before the enactment of section 11580.06(g), California courts defined "use" of a vehicle to include "unloading" that vehicle — suggesting that *Travelers* can be reconciled with this definition, to whatever extent *Travelers* remains controlling after the enactment of section 11580.06(g).  And unlike the dissent, we see no basis for confining this definition of "use" to commercial vehicles.  Thus, we conclude that unloading a vehicle constitutes "use" of that vehicle, under California law.

There is no merit to the suggestion that this definition of "use" produces absurd results.  Mid-Century and Coast National warn that, if "unloading" a vehicle constitutes "use" of that vehicle, "a person breaking a car window and stealing a purse would be 'using' the car . . . ."  As an initial matter, it does not seem absurd to suggest that a burglar has "used" the car he burgles:  the burglar has certainly "availed [him]self of" the car, or "exploit[ed]" the car. *Use*, Merriam-Webster,   http://www.merriam-webster.com/dictionary/use (last visited August 5, 2014).  More to the point, the mere fact that a burglar might be said to "use" the car he burgles does *not* mean that the burglar would be covered by a California car insurance policy.  Even if the insurance policy did not otherwise limit its "unloading" coverage to certain persons (which it would be free to do under California law, *see* Cal. Ins. Code § 11580.1(b)(4)(A)), that coverage need apply only to people who unload the car with the permission of the named insured, and within the scope of that permission. *See* Cal. Ins. Code § 11580.1(b)(4).

To be sure, the idea that Torti "used" Watson's car is counterintuitive:  unloading an injured passenger is not the way most people "use" a car.  But we are not asked to decide what "use" of a car means to most people:  we are asked to decide what "use" of a car means in the insurance policies at issue here.  Insurance policies are free to define words in idiosyncratic ways. *See, e.g.*, *Bennett v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 584, 585 (6th Cir. 2013) (pedestrian was an "occupant" of a vehicle, within the meaning of the relevant insurance policy, when a traffic collision threw her onto the vehicle's hood).  This remains true when the words used in an insurance policy are defined by statute, rather than by private parties.  "[L]egislatures, too, are free to be unorthodox." *Lopez v. Gonzales*, 549 U.S. 47, 54 (2006).

As used in Mid-Century's and Coast National's insurance policies, the term "use" is defined by California Insurance Code § 11580.06(g).  As defined by California Insurance Code § 11580.06(g), "use" of an automobile includes unloading that automobile.  Thus, Torti "used" Watson's car when she unloaded Van Horn from that car.

## CONCLUSION

We conclude that unloading an injured passenger from an automobile constitutes "use" of that automobile, under California law.  Thus, we reverse the judgment of the district court, and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

MURPHY, Circuit Judge, dissenting:

I respectfully dissent from the majority's conclusion that Torti was using Watson's vehicle when she unloaded Van Horn.

The insurance policies at issue do not define the term "use."  Merriam-Webster defines "use," in relevant part, as "to put into action or service," to "avail onself of," "to carry out a purpose or action by means of."  *Use Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/use (last visited August 5, 2014).  This definition suggests that an individual does not use a motor vehicle unless she employs it as a vehicle.  *See Waller v. Truck Ins.*

*Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995) (holding the interpretation of an insurance contract is a question of law which requires a court to "look first to the language of the contract in order to ascertain its plain meaning"). In the context of statutorily mandated permissive use coverage, the California Insurance Code defines use to "*only* mean operating, maintaining, loading, or unloading a motor vehicle." Cal. Ins. Code § 11580.06(g) (emphasis added). The majority believes the statute is clear on its face and unambiguously states that any act of unloading a motor vehicle is a use which must be covered. But the statutory provision (which actually restricts the types of activities considered to be uses of a vehicle) when read in concert with the dictionary definition of use and California case law, supports the conclusion that the unloading of a vehicle constitutes use of the vehicle only when the unloading is part of the user's act of availing herself of the vehicle. Thus, while loading or unloading a vehicle *may* constitute a use of the vehicle, it must be a component of some broader employment of the vehicle.

The requirement of some further association with the vehicle beyond mere loading or unloading is supported by the pre-§11580.06(g) case of *Travelers Insurance Co. v. Northwestern Mutual Insurance Co.*, 104 Cal. Rptr. 283 (Cal. Ct. App. 1972). In the process of changing a customer's tire at the customer's home, the owner of a service station caused a fire that damaged the customer's real and personal property. *Id*. at 284. The contention was made by Travelers that the mechanic was "using" the customer's vehicle, thereby making him an additional insured under the customer's policy. *Id*. Similar to the arguments made by Encompass in this matter, Travelers argued that changing the tire was maintenance and "use" expressly includes maintenance. *Id*.

at 285. Although California law, at the time, expressly required coverage for vehicle maintenance, *id.*, the California Court of Appeals held there was no coverage under the customer's policy because the mechanic's actions in changing the tire did not constitute a use of the vehicle. *Id*. at 288. In reaching this conclusion, the court distinguished California cases in which there was no coverage because the maintenance of the customer's vehicle was disassociated from the actual operation of the vehicle, from cases in which service station employees were covered under a vehicle owner's policy because the employees drove the vehicle as an incident of the maintenance work. *Id*. at 285–86. It also referenced California decisions counseling against extending coverage under "use" clauses in cases "involving claims by an insurer of a negligent party that its insured is covered under the extended coverage provisions of the policy of a non-negligent person." *Id*. at 288.

As the majority states, the *Travelers* court observed that "'use' has been defined to mean loading and unloading of a motor vehicle." *Id*. at 286. But the majority fails to acknowledge that the cases cited by the *Travelers* court involved commercial vehicles. *Id*. *Travelers* specifically noted that "[t]he reasoning in those cases points to the function of the insured vehicle as a means of transporting goods and arrives at the conclusion that loading and unloading of a truck is integral to the mission of transporting." *Id*. Torti was not engaged in the transportation of goods and her unloading of Van Horn was not integral to such transportation. Thus, the brief reference to loading and

unloading in *Travelers* provides no support for the majority's conclusion.[1]

The cases on which the majority relies for the proposition that California courts have "consistently" equated unloading of a non-commercial vehicle, "without more" to be a "use" of the vehicle have not so held. None, in fact, even addressed the question of whether a non-commercial vehicle can be unloaded by a individual who is not also employing it as a vehicle. In *Scottsdale Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, the California Court of Appeals specifically refused to address the "unloading" argument, concluding it was not raised below. 30 Cal. Rptr. 3d 606, 614–15 (Cal. Ct. App. 2005) (interpreting the term "operated by" in a matter involving an individual who was injured when the bucket of a cherry picker fell). In *City of Los Angeles v. Allianz Insurance Co.*, the California Court of Appeals addressed whether the City of Los Angeles was the "borrower" of a commercial truck, describing the issue as "[t]he sole question in this case." 22 Cal. Rptr. 3d 716, 719 (Cal. Ct. App. 2004). *National American Insurance Co. v. Coburn*, involved the use of a van by the person who was also operating it. 257 Cal. Rptr. 591, 595 (Cal. Ct. App. 1989) ("All the alleged negligence arose from the . . . auto-related conduct [of the operator of the vehicle], i.e., the use and loading of the van for the camping trip. It cannot be seriously argued that the parking, leaving open and braking of a vehicle

---

[1] Contrary to the majority's interpretation of the dissent, it does not draw a distinction between commercial vehicles and other types of vehicles. Nor does it suggest the unloading of a non-commercial vehicle can never constitute the use of that vehicle. The dissent merely notes that the dicta describing unloading in *Travelers* relied on California cases in which the unloading involved commercial vehicles that had also transported the unloaded goods.

are anything other than aspects of the 'use' of the vehicle."). The California Court of Appeals specifically stated that the unloading issue was "of no particular significance in" the case.  *Id*. at 596 n.2.

Similarly, the majority's statement that California courts have twice "held that unloading non-commercial vehicles constituted 'use' of those vehicles," Majority Opinion at 11, paints only half the picture.  One case involved a passenger who was bitten by a dog as both exited a vehicle driven by the insured.  *Hartford Accident & Indem. Co. v. Civil Serv. Emps. Ins. Co.*, 108 Cal. Rptr. 737, 739 (Cal. Ct. App. 1973). The California Court of Appeals held that the transportation of the dog *by the driver of the vehicle*, was a use of the vehicle.  *Id*. at 741–42.  Coverage was also found in a situation where the insured, *who was the driver of the vehicle*, unloaded a child from the vehicle.  *Nat'l Indem. Co. v. Farmers Home Mut. Ins. Co.*, 157 Cal. Rptr. 98, 99–101 (Cal. Ct. App. 1979).  Thus, in both cases upon which the Majority relies, it was concluded the unloading of the vehicle constituted a use of that vehicle by the person operating it. The majority has not identified a single California case not involving the commercial transportation of goods in which an individual who was neither the driver of, nor a passenger in, a vehicle was ruled to be using the vehicle by unloading it.

Although *Travelers* addressed the issue of maintenance as a use, its reasoning is equally applicable to the unloading of a vehicle and it supports the conclusion that an individual is not "using" a vehicle for coverage purposes simply by unloading it unless there is a nexus between the unloading and the individual's operation of the vehicle.  When the California legislature enacted §11580.06(g) limiting use to "operating, maintaining, loading or unloading a motor

vehicle" it was deemed "to have been aware of statutes already in effect and of judicial decisions interpreting them and to have enacted the statute in light of them." *Scottsdale Ins. Co.*, 30 Cal. Rptr. 3d at 613. Thus, the most reasonable interpretation of § 11580.06(g) is that mere unloading does not constitute use.

The policy provisions at issue in this matter, given their ordinary meaning and construed in the context of the contracts as a whole and the applicable statute and case law, are unambiguous and do not cover Torti's removal of Van Horn from Watson's vehicle. Torti's actions in unloading Van Horn do not constitute a use of Watson's vehicle because Torti did not avail herself of the vehicle simply by unloading it. Because Torti was not operating Watson's vehicle, or connected to the vehicle or the transportation of Van Horn in any way, she was not using Watson's vehicle in a manner contemplated by the policies when she unloaded Van Horn. Thus, Torti was not an insured under Watson's policy or her own motor vehicle policy.

Because Torti was not using Watson's vehicle, Encompass cannot show a potential for coverage under the Coast National and Mid-Century policies and the district court should be affirmed.