**HOTCHALK, INC., Plaintiff,**

v.

**SCOTTSDALE INSURANCE CO., Defendant.**

No. C 16–3883 CW

United States District Court, N.D. California.

Signed 11/15/2016

<hr />

85. *See* Doc. 229 at pp. 41–42 (Plaintiffs' Facts 111–112).

86. Doc. 229 at p. 43, 46 (Plaintiffs' Facts 116, 123).

Peter Roldan, Christopher Allen Wimmer, Emergent Legal, San Francisco, CA, for Plaintiff.

Alexis Rogoski, Jonathan Andrew Sorkowitz, Skarzynski Black LLC, New York, NY, Hee Young Lee, Herman & Lee, LLP, Sonoma, CA, for Defendant.

## ORDER GRANTING DEFENDANT SCOTTSDALE'S MOTION FOR JUDGMENT ON THE PLEADINGS

Claudia Wilken, United States District Judge

Defendant Scottsdale Insurance Co. files a motion under Rule 12(c) which provides for a motion for judgment on the pleadings, although Scottsdale titled it a motion to dismiss Plaintiff HotChalk Inc.'s complaint. Docket No. 16. HotChalk has filed a response, and Scottsdale has filed a reply. Also before the Court is Scottsdale's request for judicial notice. Docket No. 16–1. Having considered oral argument on the motions and the papers submitted by the parties, the Court GRANTS Scottsdale's motions. The Court grants HotChalk leave to file an amended complaint within seven days, if it can properly do so.

## BACKGROUND

This case arises out of an insurance coverage dispute between HotChalk and Scottsdale. HotChalk alleges Scottsdale sold it a business and management indemnity policy, EKS3115498, providing directors and officers coverage for the period November 13, 2013 to November 13, 2014. HotChalk alleges Scottsdale violated

the policy when it refused to defend and indemnify HotChalk in a lawsuit alleging violations of the False Claims Act.

HotChalk helps universities create or expand their online degree programs. Hot-Chalk's services broadly include promoting and administering those programs, including recruiting students.

On April 10, 2014, former employees of HotChalk filed a qui tam complaint against the company and its university clients, alleging violations of the False Claims Act, 31 U.S.C. § 3729, which prohibits knowingly submitting false claims to the government for payment or approval. The False Claims Act allows private citizens to sue on behalf of the United States. 31 U.S.C. § 3729(b). The qui tam plaintiffs alleged HotChalk falsely certified to the United States Department of Education that it complied with Title IV of the Higher Education Act of 1965. The Higher Education Act prohibits any institution that participates in the grant and loan programs authorized under the Act from paying employees charged with admissions or financial aid "any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid." 20 U.S.C. § 1094(a)(20); see also 34 C.F.R. § 668.14(b)(22). The qui tam plaintiffs alleged HotChalk provided numerous forms of incentive payments to employees charged with recruiting students, and committed other violations. HotChalk is a for-profit corporation, but the qui tam plaintiffs alleged that it was required to comply with the incentive compensation ban, as were the co-defendant universities. See 20 U.S.C. § 1094(c) (compliance and audits of third-party servicers); 34 C.F.R. § 668.25 (contracts between institution and third-party servicers).

On May 14, 2014, HotChalk tendered the lawsuit to its insurers including Scottsdale. On June 11, Scottsdale denied coverage on the grounds that the claims against HotChalk arose out of the company's professional services rendered to its customer universities and were therefore excluded from coverage under the policy.

Although the United States did not formally intervene in the case, it convened settlement negotiations. On August 20, 2015, HotChalk reached a settlement with the United States and the qui tam plaintiffs under which it agreed to pay $500,000 to the United States and $470,000 to the plaintiffs for their attorneys' fees. Hot-Chalk asserts it incurred $986,746 in attorneys' fees and costs to defend itself in the qui tam litigation.

On June 10, 2016, HotChalk filed a complaint against Scottsdale in San Francisco Superior Court for breach of contract and breach of the implied covenant of good faith and fair dealing. On July 11, the case was removed. HotChalk demands compensatory and consequential damages and its attorneys' fees.

## LEGAL STANDARD

A motion for judgment on the pleadings, like a motion to dismiss for failure to state a claim, addresses the sufficiency of a pleading. The motions are "functionally identical" and the test established in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), applies to motions brought under either rule. Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (quoting Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir. 1989)).

 As a result, "[d]ismissal under Rule 12(b)(6), and by analogy under 12(c), is appropriate only where the complaint 'lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" Nazomi Commc'ns, Inc. v. Nokia Corp., 2011 WL 2837401, at *1 (N.D. Cal.)

(citing Cafasso and quoting Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008)); see Iqbal, 556 U.S. at 663, 129 S.Ct. 1937 (citing Fed. R. Civ. P. 8(a)(2) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955). The court may consider, in addition to the face of the pleadings, exhibits attached to the pleadings, Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987), and facts which may be judicially noticed, Mullis v. United States Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

 When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246–47 (9th Cir. 1990); see Pac. W. Grp., Inc. v. Real Time Sols., Inc., 321 Fed.Appx. 566, 569 (9th Cir. 2008). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## DISCUSSION

 As a preliminary matter, Scottsdale has asked the Court to take judicial notice of certain documents, and both parties cite the documents throughout their papers. Scottsdale seeks judicial notice of the complaint in the underlying False Claims Act litigation, the complaint in the instant lawsuit, and attachments to both complaints including the underlying insurance policy and a service agreement between HotChalk and one of its customer universities. HotChalk has not opposed. On a Rule 12(c) motion, the Court may consider certain materials beyond the pleadings, including exhibits to the non-moving party's pleading, Durning, 815 F.2d at 1267, and facts that can be judicially noticed, Mullis, 828 F.2d at 1388. Documents in public court records may be judicially noticed. Biagro W. Sales Inc. v. Helena Chem. Co., 160 F.Supp.2d 1136, 1140 (E.D. Cal. 2001) ("matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies"). A court may also take judicial notice of documents that are referenced in the complaint or central to the claims and undisputedly authentic. EFK Investments, LLC v. Peerless Ins. Co., 2014 WL 4802920, at *2 (N.D. Cal.) (taking judicial notice of insurance policies outside the public record in dispute over exclusion provision). Accordingly, Scottsdale's request for judicial notice is GRANTED.

 California substantive insurance law governs this diversity case. See Encompass Ins. Co. v. Coast Nat'l Ins. Co., 764 F.3d 981, 984 (9th Cir. 2014). Under California law, interpretation of an insurance policy and whether it provides coverage is a question of law to be decided by the court. Waller v. Truck Ins. Exch., Inc., 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995), as modified on denial of reh'g (1995).

 An insurance carrier "owes a broad duty to defend its insured against claims that create a potential for indemni-

ty." Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993); see also Gray v. Zurich Ins. Co., 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) ("We point out that the carrier must defend a suit which potentially seeks damages within the coverage of the policy." (emphasis in original)). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." Horace Mann Ins., 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792. However, the duty to defend is not unlimited; it is measured by the nature and kinds of risks covered by the policy. Waller, 11 Cal.4th at 19, 44 Cal.Rptr.2d 370, 900 P.2d 619. The duty to defend is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded. Montrose Chem. Corp. v. Super. Ct., 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993).

The burden is on the insured to establish the existence of a potential for coverage. Montrose Chem., 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153. Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor. Id. at 299–300, 24 Cal.Rptr.2d 467, 861 P.2d 1153. Once the insured meets its burden, the insurer must establish the absence of any such potential coverage. Id. Thus, "the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove that it cannot." Id. (emphasis in original); see also MacKinnon v. Truck Ins. Exch., 31 Cal.4th 635, 648, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003), as modified on denial of reh'g (2003) ("The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded.").

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." Horace Mann Ins., 4 Cal.4th at 1081, 17 Cal. Rptr.2d 210, 846 P.2d 792; see also MacKinnon, 31 Cal.4th at 649, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (finding "in order to ascertain the scope of an exclusion, we must first consider the coverage language of the policy").

The California Supreme Court has declared "the principles that govern the construction of insurance policy language in this state." MacKinnon, 31 Cal.4th at 647, 3 Cal.Rptr.3d 228, 73 P.3d 1205. Under these principles, courts "must give effect to the 'mutual intention' of the parties" at the time the contract was formed. Id. "Such intent is to be inferred, if possible, solely from the written provisions of the contract." Id. "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' controls judicial interpretation." Id. at 647–48, 3 Cal. Rptr.3d 228, 73 P.3d 1205 (citations omitted).

Under these principles, "exclusionary clauses are interpreted narrowly against the insurer," which "cannot escape its basic duty to insure by means of an exclusionary clause that is unclear." Id. As a result, the "burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." Therefore, "in order for an exclusionary clause to effectively exclude coverage, it must be conspicuous, plain and clear." Id. at 639, 3

Cal.Rptr.3d 228, 73 P.3d 1205 (citation and internal quotation marks omitted).

However, even in the context of exclusionary provisions,

California Courts Have Consistently Given a Broad Interpretation To the Terms 'Arising Out of' or 'Arising From' in Various Kinds of Insurance Provisions. It Is Settled That This Language Does Not Import Any Particular Standard of Causation or Theory of Liability Into an Insurance Policy. Rather, It Broadly Links a Factual Situation With the Event Creating Liability, and Connotes Only a Minimal Causal Connection or Incidental Relationship.

Medill v. Westport Ins. Corp., 143 Cal. App.4th 819, 830, 49 Cal.Rptr.3d 570 (2006) (citation omitted) (construing "arising out of" broadly and finding no coverage as a result of exclusion in directors and officers policy).

■ Scottsdale concedes that the coverage section of the policy affords coverage for civil lawsuits and affords a duty to defend. The instant motion to dismiss turns entirely on whether the professional services exclusion in the policy that Scottsdale issued to HotChalk applies to HotChalk's claim for coverage. The undisputed language of the exclusion is as follows:

Insurer shall not be liable for Loss under this Coverage Section on account of any Claim alleging, based upon, arising out of, attributable to, directly or indirectly arising from, in consequence of, or in any way involving the rendering or failing to render professional services, provided, however, this exclusion shall not apply to any Claim(s) brought by any securities holder of the Company in their capacity as such.

Docket No. 16–3, Complaint, Ex. A, insurance policy, endorsement No. 20 (bold in original). Scottsdale argues the False Claims Act lawsuit against HotChalk fell within this exclusion and it therefore had no duty to defend or indemnify HotChalk. Scottsdale further argues that the exclusion was consistent with the type of insurance provided under the policy—directors and officers insurance—and that coverage for professional services risks would be provided by a professional errors and omissions policy.

The policy does not define "professional services;" however, HotChalk asserts that it is in the "business of providing technology and support services to universities looking to create or expand online education programs" and concedes that "these services" constitute professional services. Docket No. 22 at 7. As a result, the instant motion turns on whether the False Claims Act lawsuit arose out of these professional services.

The False Claims Act lawsuit against HotChalk arose out of its alleged practice of compensating employees based on their success in securing enrollments. HotChalk argues that the lawsuit therefore related strictly to its employee compensation system, an internal aspect of the way it ran its business, and accordingly was unrelated to its professional services. That distinction is unavailing.

HotChalk's allegedly incentive-based compensation scheme could only have been improper because of the professional services that HotChalk provided. HotChalk is required to comply with the incentive compensation ban in 20 U.S.C. § 1094(a)(20) in order to be able lawfully to provide its professional services. Indeed, as part of its service agreement with one of the universities, HotChalk specifically agreed to comply with 20 U.S.C. § 1094(a)(20). Docket No. 16–2, Ex. A, False Claims Act complaint, Ex. A, services agreement with Centenary College § 11.2. Unlike labor laws, the incentive compensation ban regulates the specific professional activity in which HotChalk engaged, and only applied

to HotChalk's compensation of its employees because it provided those professional services.

Congress instituted the incentive compensation ban in a 1992 amendment to the Higher Education Act, Higher Education Amendments of 1992, Pub. L. No. 102–325, 106 Stat. 448 (1992), and the legislative history behind the amendment shows that the incentive compensation ban was intended to protect the government's interests as a loan provider or guarantor, as well as the interests of unwary potential loan recipients, by helping to ensure that the students receiving loans are qualified and unlikely to default. In a report entitled, Abuses in Federal Student Aid Programs, the Senate Committee on Governmental Affairs found that from 1983 to 1989 annual student loan volume nearly doubled while defaults increased more than threefold, increasing the cost of defaults to the program from approximately ten percent of program costs to thirty-six percent in that period and to more than fifty percent by 1990. S. Rep. No. 102–58, at 1, 8 (1991). The report also found that proprietary schools put business over education by, among other things, holding contests "whereby sales representatives earned incentive awards for enrolling the highest number of student [sic] for a given period." Id. In a similar report, the House Committee on Education and Labor found, in light of doubling of student debt between 1980 and 1990, "Where past history knew a class of indentured servants, today we are producing a class of indentured students in bondage to their educational debts." H.R. Rep. No. 102–447, at 9. The committee found that the amendment "strengthen[ed] controls on schools and colleges to end waste and abuse and to minimize loan defaults," including by "prohibiting the use of commissioned sales persons and recruiters." Id. at 10. The legislative history behind the incentive compensation ban makes clear that it was intended to regulate the manner in which schools and their third-party servicers performed their services in order to protect the government's own financial interests and its interest in protecting student borrowers.

In Begun v. Scottsdale Ins. Co., Inc., 2013 WL 12077974 (N.D. Cal.), aff'd sub nom. Begun v. Scottsdale Ins. Co., 613 Fed.Appx. 643 (9th Cir. 2015), a court in this district interpreted precisely the same exclusion provision in a Scottsdale business and management indemnity insurance policy under California law. In that case, a lawyer sued his payroll services company, Clickbooks, and its directors for failing to deposit payroll tax funds and instead absconding with the money. The directors tendered the lawsuit to Scottsdale. Scottsdale refused coverage on the basis that the lawsuit arose out of Clickbooks' professional services. The underlying lawsuit went to trial against the directors only, who did not themselves provide the services that constituted Clickbooks' professional services. The court found that the exclusion provision was unambiguous because the term " 'professional services' does not lack a generally accepted meaning outside the context of the policy," and therefore enforced it as written. Id. at *7. The court also found the provision "very broad," id., and noted that it covers conduct "directly or indirectly resulting from" and "in any way involved" in rendering professional services, id. at *11 (emphasis in original). Finally, the court found that the underlying lawsuit against the directors arose out of the professional services provided by Clickbooks. Id. at *8.

The causal link between the excluded activity and the actions underlying the lawsuit is even tighter in this case than in Begun. In Begun, the state court in the underlying case found that the directors "did not provide any professional services

at all," yet the district court found that the lawsuit arose out of Clickbooks' professional services because, "absent the professional services that Clickbooks undisputedly performed, Plaintiffs would not have made the business decision" that resulted in the lawsuit against them. Begun, 2013 WL 12077974, at *11. Here, as discussed, Hot-Chalk undisputedly provided professional services, and absent those professional services, HotChalk would not have been subject to the law that it was alleged to have violated in the underlying False Claims Act lawsuit.

At oral argument on October 25, Hot-Chalk newly argued that a professional services exclusion provision only excludes coverage for lawsuits brought by the entity that commissioned the insured's professional services, and therefore does not exclude coverage for claims brought by third parties as was the case here. HotChalk cited no law to support this proposed rule, and at least one district court applying California law has found that a professional services exclusion provision excluded coverage for a lawsuit brought by a third party. Tagged, Inc. v. Scottsdale Ins. Co., 2011 WL 2748682 (S.D.N.Y.).

Accordingly, the Court finds that the False Claims Act lawsuit arose out of Hot-Chalk's professional services and could not potentially fall outside the professional services exclusion. Because HotChalk's insurance claim was not potentially covered under its policy with Scottsdale, its claim for breach of contract must be dismissed.

In addition to its claim for breach of contract, HotChalk also sued Scottsdale for breaching the implied covenant of good faith and fair dealing. "[T]o establish an implied covenant tortious breach, an insured must show first, that benefits were due under the policy, and second, that the benefits were withheld without proper cause. It follows an insured cannot maintain a claim for tortious breach of the implied covenant of good faith and fair dealing absent a covered loss." Benavides v. State Farm Gen. Ins. Co., 136 Cal. App.4th 1241, 1250, 39 Cal.Rptr.3d 650 (2006) (citations omitted). Because Hot-Chalk's insurance claim was not covered, its second claim also fails.

## CONCLUSION

Accordingly, the Court grants Scottsdale's motion for judgment on the pleadings and its request for judicial notice. HotChalk may file an amended complaint within seven days, if it can do so without rearguing positions that have been rejected in this Order, or contradicting facts previously alleged. If after the expiration of seven days HotChalk has not filed an amended complaint, judgment shall be entered by the clerk of the court.

IT IS SO ORDERED.